**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                                        |   |                          |
|----------------------------------------|---|--------------------------|
|                                        | * |                          |
| **THERESA COSTLEY,**                   | * |                          |
| **Plaintiff**                          | * |                          |
| **v.**                                 | * | **CIVIL NO.  JKB-12-1574** |
| **SERV. PROT. ADVISORS, LLC,** *et al.,* | * |                          |
| **Defendants**                         | * |                          |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM**

*I.  Background*

Plaintiff Theresa Costley originally filed this lawsuit on June 24, 2011, as a class action in Baltimore City (Maryland) Circuit Court, asserting violations of the Maryland Telephone Solicitations Act ("MTSA") and the Maryland Consumer Protection Act ("MCPA") as well as a claim for restitution.  (ECF No. 2.)  Defendants in the suit were Service Protection Advisors, LLC ("SPA"), Lake Shore Premium Finance ("Lake Shore"), and Automobile Consumer Service Corporation ("ACSC").  According to ACSC, this case was actively litigated by all concerned, including conducting discovery and filing of various dispositive motions, but Costley never presented the issue of class certification to the Circuit Court.  (ACSC's Mot. Summ. J. Supp. Mem. 1, ECF No. 30.)

On May 18, 2012, Costley filed in state court an amended complaint that deleted any mention of a class action and asserted her individual claims under MTSA and MCPA and her individual claim for restitution.  (ECF No. 5.)  On May 25, 2012, Defendants removed the case to this Court.  (ECF No. 1.)  Thereafter, the Court denied Costley's motion to remand.  (ECF Nos. 10, 20.)  After filing its answer (ECF No. 8) to Costley's amended complaint, ACSC filed a

motion for summary judgment (ECF No. 30).   The Court has considered it, Plaintiff's response in opposition (ECF No. 35), and ACSC's reply (ECF No. 38).   No hearing is necessary.   Local Rule 105.6.   The motion will be granted in part and denied in part.

## II.   Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).   The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact.   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment.   *Id.* at 252.   The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).   Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit.   Rule 56(c)(4).

### III.  *Undisputed Facts*

ACSC entered into a contract, called a "Gold Key Protection Plan," with Costley to provide her with certain services for her automobile.  (ACSC's Reply 4, ECF No. 38 ("[ACSC] . . . agrees with Costley and attests to the existence of a contract between it and her") .)  This contract provides as follows:

> PARTIES TO THE CONTRACT
> The provider of the service contract is Automobile Consumer Service Corporation, 2007 Poole Dr., Huntsville, AL  35810 (the "Provider").  This service contract is between the Contract Holder and the Provider.

(Pl.'s Opp'n, Ex. 2 at 1.)   Further, the contract defines "Administrator" or "ACSC" as Automobile Consumer Service Corporation, "which will administer this service contract, process and pay claims."  (*Id.* at 2.)  It indicates "[t]he Direct Marketer (Seller) should be contacted for cancellation procedures and other contract changes, including but not limited to VIN and start mileage changes."  (*Id.*)  The contract purchase date was October 6, 2010.  (*Id.* at 1.)  The "Direct Marketer (Seller)" is shown on the contract as "Service Protection Advisors, LLC, 408 Eagle Street, South Haven MI  49090"; the finance company is shown as "Lake Shore Premium Finance, 408 Eagle Street, South Haven MI 49090."  (*Id.*)  At the bottom of the first page of the contract, it says "Telephone Sale" in the blank for the customer's signature; it also indicates the "Activation Price" is $195 and the "Monthly Payment" is $49.99.  (*Id.*)  In a later section dealing with cancellation and refunds, the contract specifies:

> - The Contract Holder may cancel this Contract by contacting the Direct Marketer (Seller) listed on the Declaration Page of this Contract by phone.
> - Cancellation is not complete until notification is received by the Administrator.
> - Cancellation in the first 30 days will result 100% [*sic*] of the paid premium being refunded.
> - Contract Holders failing to obtain cancellation service within 45 days should contact the Administrator at ACSC, P.O. Box 1231, Huntsville, AL 35805.
>
> If you have any questions or problems regarding cancellation of this contract, you may contract [*sic*] ACSC, (the Administrator), by mail . . .  or phone . . . .

3

(*Id.* at 7.)

ACSC does not dispute Costley's allegations regarding the genesis of the contract. (ACSC's Supp. Mem. 4.)  Those, as retold by ACSC are as follows:

> On or about October 6, 2010, Costley expressly alleges that she received a telephone call from SPA – not from ACSC – offering to sell her a vehicle service contract for her 2005 Nissan Maxima.  Am. Compl. ¶ 13.  During this call, SPA informed Costley that the cost for the vehicle service contract was $195.00 initially and $49.00 each month thereafter for two years.  *Id.* ¶ 17.  At the conclusion of this call, Costley purchased the vehicle service contract and authorized SPA to deduct the contract payments directly from her bank account. *Id.* ¶¶ 16-17.  Shortly thereafter, Costley received a written copy of her vehicle service contract.  *Id.* ¶ 18 Just a little more than a month after purchasing the service contract, on or about November 19, 2010, Costley made a claim under the contract. [Lamy] Aff. ¶ 18.  ACSC denied Costley's claim as it had a right to do under the pre-existing condition exclusion in the contract.  *Id.*

(*Id.*)

ACSC refers to Lake Shore as "the legal successor to SPA" (*id.* at 3), and the February 2011 contract between ACSC and SPA lists the latter as "Service Protection Advisors, LLC, d/b/a Lakeshore Premium Financing, a Michigan Limited Liability Company ("SPA")." (ACSC's Mot. Summ. J., Ex. A-1.)  For ease of reference in this memorandum, the Court will refer to the two codefendants as "Lakeshore/SPA."

## IV.  Analysis

ACSC argues it is entitled to summary judgment on all three counts of the amended complaint.  As to Counts One and Three, alleging violations of the MTSA and the MCPA, respectively, ACSC contends it was Lakeshore/SPA that made the telephone call to Costley and that Lakeshore/SPA was neither ACSC's actual nor its apparent agent such that ACSC is responsible for any statutory violations emanating from that telephone call.  (ACSC's Supp. Mem. 6.)  Regarding Count Two, ACSC says Costley cannot maintain a claim for restitution under the equitable theory of unjust enrichment because a contract exists between the two parties

and she is really seeking restitution for what amounts to a claim of contractual breach.  (*Id.* 11.)

In ACSC's reply, it turns its first argument around and contends ACSC is not Lakeshore/SPA's

agent.  (ACSC's Reply 5.)   The principal-agency argument has no merit.   The argument

regarding the viability of the unjust enrichment claim is meritorious based upon the parties'

concessions that they entered into a contract covering the subject matter.

Under the MTSA, it is a statutory violation for a merchant engaging in a telephone

solicitation for consumer services to make or submit any charge to a consumer's credit account

until after the merchant receives from the consumer a contract in compliance with the MTSA.

Md. Code Ann., Com. Law § 14-2204 (LexisNexis 2005).  Among other requirements, a contract

must be in writing and signed by the consumer, must state the contract's total price, and must

> contain, in at least 12 point type, immediately preceding the signature, the
> following statement:
>> "You are not obligated to pay any money unless you sign this contract and
>> return it to the seller."

Section 14-2203(b)(1), (4), (5).  Costley alleges that each of these specified statutory prohibitions

was violated.  A violation of the MTSA is also a violation of the MCPA.  Section 14-2205(1).

The MCPA permits any person to bring an action to recover for injury or loss resulting from a

violation of the MCPA, and it further permits the award of attorney's fees if a damage award is

made.  Section 13-408(a), (b).

Given that ACSC did not itself make the telephone call that lies at the heart of Counts

One and Three, ACSC can only be held liable if it is possible for a jury to find that

Lakeshore/SPA acted as ACSC's agent.  The decision of the Maryland Court of Appeals in

*Green v. H & R Block*, 735 A.2d 1039 (Md. 1999), provides guidance on the determination of

whether a principal-agent relationship exists.

The *Green* opinion noted that the trial court in that case had relied upon an earlier

Maryland Court of Special Appeals decision, interpreted by the trial court to set forth a

three-factor test that must be met in order to establish a principal-agent relationship.  *Id.* at 1048-49 (citing *Schear v. Motel Mgmt. Corp.*, 487 A.2d 1240, 1248 (Md. Ct. Spec. App. 1985)).  *Green* concluded,

> The three factors adopted in *Schear* and used by the trial court in this case provide guidance to determining whether an agency relationship exists.  The trial court, however, overstated the significance of the three factors when it labeled them "essential elements" of an agency relationship.  The factors are proper considerations for determining agency, but rather than being determinative, the three factors should be viewed within the context of the entire circumstances of the transaction or relations.  They are neither exclusive nor conclusive considerations in determining the existence of an agency relationship.

*Id.* at 1049.  The three factors mentioned in *Schear* were (1) the principal's right of control over the agent, (2) the duty of the agent to act primarily for the benefit of the principal, and (3) the power of the agent to alter the principal's legal relations.  *Id.*  Instead of a hard-and-fast test for the principal-agent relationship, the *Green* court focused on the intent of the parties, as evidenced by their agreements and actions.  *Id.*  Thus, two fundamental elements of the relationship are necessary:  (1) the principal's manifestation or indication to the agent of the principal's consent for the agent to act for the principal's benefit, and (2) the agent's consent to act for the principal.  *Id.* (citing W. Edward Sell, *Sell on Agency* § 7, at 7-8 (1975)).

Relying upon the *Green* opinion, the Court concludes that a genuine dispute of material fact exists as to whether ACSC used Lakeshore/SPA as an agent to enter into ACSC's contract with Costley.  The most obvious piece of evidence supporting the Plaintiff's case is the contract itself, which bound ACSC and Costley into a contractual relationship immediately following the telephone call in issue and which reflects the terms agreed to in the telephone call, even referencing the "Telephone Call" in place of Costley's signature.  ACSC has also entered into various formal agreements with Lakeshore/SPA consistent with a principal-agent relationship. A jury could lawfully find from this evidence that ACSC's relationship with Lakeshore/SPA is that

of principal and agent.  As to Counts One and Three, therefore, ACSC is not entitled to summary judgment and its motion will be denied as to those counts.

On Count Two claiming unjust enrichment of Defendants, the Maryland Court of Appeals has said that such a quasicontractual claim is not permissible if an express contract existed between the parties.  *County Com'rs. Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 611 (Md. 2000).  Both Costley and ACSC agree they entered into a contract, which has been brought before the Court.  Under *Dashiell & Sons*, the unjust enrichment claim cannot lie.  Costley argues that as long as ACSC disputes she is entitled to recovery under the contract, then she is permitted to make the equitable claim in the alternative.  (Pl.'s Opp'n 11.) But Costley has not asserted a breach-of-contract claim, and any recovery realized by her will not be pursuant to the contract.  Thus, ACSC does not need to dispute that she is entitled to recovery under the contract because she has not sought to recover under the contract.  ACSC is entitled to summary judgment on Count Two.

### V.  Conclusion

A genuine dispute of material fact precludes summary judgment for ACSC on Counts One and Three.  ACSC is entitled as a matter of law to summary judgment on Count Two.  A separate order will be issued.

DATED this 8th day of March, 2013.

BY THE COURT:

_____/s/_____

James K. Bredar
United States District Judge